

**SIGNED this 19th day of October, 2011.**

_____
**JOHN C. AKARD
UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE: | BANKR. CASE NO. |
| STEPHEN W. BOYD | 11-51797 |
| *DEBTOR* | CHAPTER 7 |

**MEMORANDUM OF OPINION
ON MOTION TO ENFORCE CONTEMPT ORDER**

    On October 13, 2011, the court conducted a hearing on the Motion to Enforce Contempt Order filed by Elbee Investments, Inc. ("Elbee") against Stephen W. Boyd (the "Debtor") and his wife, Stephanie Tullis.[1] No evidence was offered concerning Ms. Tullis, so the motion will be denied with respect to her.

---

[1] In other documents in this case she is referred to as Stephanie Tullis Boyd, but in this motion Elbee refers to her as Stephanie Tullis.

1

Background: The Debtor is an attorney. Documents in the file reflect that he was sued by Elbee and other parties in the probate court of Bexar County Texas. The suit alleged that he stole large sums of money from elderly people by the use of various trusts, corporations, and bank accounts. On May 24, 2011, while trial of that suit was in progress, the Debtor filed this Bankruptcy case, effectively stopping the state court suit because of the automatic stay of Section 362 of the Bankruptcy Code.

Elbee felt that the Debtor was hiding assets and not being forthcoming in disclosing his assets and business affairs.[2] Elbee filed a Motion to Compel Inspection of Property, Production of Documents and Compliance with Subpoenas Served on Stephen W. Boyd and his wife, Stephanie Tullis Boyd [Docket No. 26]. Following a hearing, Judge Leif Clark issued an order entered on August 9, 2011 [Docket No. 39]. Basically, the order covered three things:

- It ordered the Debtor and his wife (1) to allow Elbee's agents to inspect the property at 2 Belcourt Place, San Antonio, Texas (the "Belcourt Property") and (2) to furnish information and documents relating to the Belcourt Property to Elbee. At the October 13, 2011 hearing the attorney for Elbee advised the court that the stay had been relieved as to the Belcourt Property, that the state court had awarded the property to Elbee, that the Debtor and his wife had vacated the property, that Elbee had take possession of the property, and that the state court judgment had become final.
- The Debtor and his wife were ordered to appear for their depositions to be taken on August 15, 2011.
- The Debtor was ordered to turn over to Elbee at 10:00 a.m. on August 11, 2011 the following:
  - "All bank statements, online statements, cancelled checks, deposit slips, and check registers for any time period since June 30, 2009, relating to: (a) all IOLTA accounts of the Law office of Stephen W. Boyd & Associates, PLLC and/or Stephen W. Boyd, or from which Stephen W. Boyd had the right to withdraw funds; (b) the account with an account number ending in 7850, which Debtor's counsel represented was a JP Morgan Chase account; and (c) the 'MMA' or 'money market' account with an account number ending in 4626."
  - The order further "ORDERED as to the production of any bank statements, online statements, cancelled checks, deposit slips, and check registers required to be produced, if copies of such documents are not in the possession of Stephen W. Boyd, he is ORDERED to obtain copies thereof from the banks or financial institutions were such accounts were or are located and to produce such copies at the time and place stated in the first sentence of the preceding decretal paragraph."

Elbee filed a motion to hold the Debtor and his wife in contempt, asserting that they had not complied with the August 9, 2011 order [Docket No. 43]. A hearing on that

---

[2] Pleadings in other matters in this case show that the Chapter 7 Trustee shares Elbee's views, but the trustee is not a party to this motion.

2

motion was held on August 25, 2011 and on September 1, 2011 Judge H. Christopher Mott issued an order granting that motion [Document No. 59]. The order found the Debtor and his wife in civil contempt for failing to comply with the August 9, 2011 order in various ways including: (1) failing to appear for their depositions on August 15, 2011 and (2) failing to produce the financial records required to be produced. Among other things the court ordered:

- "The Court reaffirms the first paragraph of page 4 of the August 9, 2011 Order and ORDERS that Stephen W. Boyd, as to the production of any bank statements, online statements, cancelled checks, deposit slips, and check registers required to be produced under the Courts August 9, 2011 Order, that if such documents are not in the possession of Stephen W. Boyd, he is ORDERED to obtain copies thereof from the banks or financial institutions where such account were or are located and to produce such copies on September 26, 2011 at 10:00 a.m. at the offices of S. Mark Murray at 2818 Nacogdoches Rd., San Antonio, Texas."
- "The Court further ORDERS that Stephen W. Boyd obtain from Frost Bank, J.P. Morgan Chase Bank, CitiBank and any other bank holding accounts from which Stephen W. Boyd has had the right to withdraw funds or on which Stephen W. Boyd was a signatory, from June 30, 2009 to present, a list of all such accounts, and he shall produce the lists obtained from the banks, together with any bank statements, online statements, cancelled checks, deposit slips and check registers respecting such accounts at the time and place set forth in the preceding paragraph. It is ORDERED that Stephen W. Boyd shall provide the banks with his social security number and his law firm tax ID number in order to facilitate the banks search for responsive bank accounts."
- The court ordered the Debtor and Stephanie Tullis Boyd to appear for depositions on October 3, 2011.
- The court awarded $5,000 in attorney's fees to Elbee which the Debtor and his wife were to pay by September 26, 2011
- "The Court ORDERS that should Stephen W. Boyd and/or Stephanie Tullis Boyd fail to fully and completely comply with this Order and to also appear for their depositions as Ordered, the Elbee Investment, Inc.'s Objection to Debtor's Exemptions shall be in all respects granted."

Evidence at the October 13, 2011 hearing: Apparently the Debtor and his wife paid the $5,000 specified in the September 1, 2011 order and gave their depositions as required by that order. The Debtor delivered to Elbee statements on a number of bank accounts, some of which were mentioned during the hearing. The bank account statements showed numerous transfers into and out of the numerous accounts. Those transfers were identified only by the last four digits of the other accounts. When asked to identify the other accounts, the Debtor could not do so.

In getting statements from banks, the Debtor followed the letter of the prior orders in that he only asked the bank to search accounts that were associated with his social security number or his law firm tax identification number. He did not furnish the banks with the tax identification numbers of the various trusts and corporations which he controls, and thus on accounts which he controls and has signature authority. The orders

3

required him to furnish information on all accounts over which he had signature authority. He did not do so.

During his deposition, the Debtor mentioned another account on which he has signature authority, but for which he did not furnish information.

The Debtor's bookkeeper, Robert Broberg, died on June 28, 2011. His estate is being handled by attorney Larry Shallcross, who testified at this hearing. Mr. Broberg kept the Debtor's records on two personal laptop computers. The material was password protected and it took about a month after Mr. Broberg's death before Mr. Shallcross had access to the Debtor's information from the computers. Among that information was the Debtor's check register. The Debtor understood that a copy of the check register had been given to the Chapter 7 Trustee, so he made no attempt to secure a copy to give to Elbee, in spite of two direct orders from this court to furnish his check registers to Elbee.

Although he has continued an active law practice, the Debtor gave no indication that he has secured another bookkeeper after Mr. Broberg's death. In testimony at the October 13 hearing, the Debtor stated he would have to put together information for his tax return at the end of the year. He stated he could remember the transactions when compiling that information. However at the hearing, he gave information about deposits which was different from the information he had given during his deposition.

The Debtor testified he had not kept a check register since Mr. Broberg died, but during his deposition he admitted he had a check register. He did not turn that check register over to Elbee.

In spite of being ordered to do so, the Debtor did not furnish deposit slips or any other information about the various transactions in his bank accounts to Elbee. Although having the bank statements is of some assistance in learning about the Debtor's financial affairs, the check registers, deposit slips, and other documents are necessary to trace the Debtor's financial affairs. His bank statements reflect almost daily transfers of funds among his myriad bank accounts; all without any explanation.

The Debtor has not furnished information about all of the corporate, trust and other accounts over which he has signatory powers.

Conclusion: The Debtor's position seems to be: "If you find it, I will tell you as little as I can about it and I certainly will not tell you about anything you have not found." He also seems to have a convenient loss of memory. The court has the firm conviction that the Debtor continues to do his best to evade the orders of this court and to hide his assets from the trustee and his creditors.

The court therefore finds the Debtor in civil contempt of this court. The September 1, 2011 order stated that if the Debtor should "fail to fully and completely comply with this Order . . . that Elbee Investment, Inc.'s Objection to Debtor's Exemptions shall be in all respects granted."

4

Elbee's Objection to Debtor's Exemptions [Docket No. 21] was filed July 5, 2011. The Debtor filed an amended Schedule C - Property Claimed as Exempt on September 25, 2011 [Docket No. 81], which had the effect of replacing his prior claim of exemptions. The prayer in Elbee's Objections to Exemptions reads:

> "Elbee Investments, Inc. respectfully requests that the Court deny Debtor's homestead exemption claim in the Belcourt property and deny the exemptions for any personal property purchased with funds wrongfully obtained from Elbee Investments, Inc."

The Debtor claimed as exempt the house and lot at 2 Belcourt Place, San Antonio, Texas, which he valued at $930,080.00. With respect to this property, the Schedule C states: "Cause No. 2009-PC-2661-a Emma Block, et al vs. Stephen Boyd, et al. Motion for Summary Judgment Disputed by Debtor and Final Order is not signed." At the October 14, 2011 hearing Elbee's attorney advised the court that the automatic stay had been lifted as to this property and the state court had awarded title to Elbee. The Debtor appealed that judgment, but Elbee has recently learned that the Debtor withdrew the appeal. The Debtor and his wife have moved out of the property. The court denies any clam of homestead which the Debtor might have in this property.

In the September 25, 2011 Schedule C, the Debtor claimed as exempt the following personal property:
- "household goods and furnishings (total value of $22,700 – some items are community property of Debtor and his spouse)." The Debtor valued his portion at $13,950.00.
- "paintings, prints, American Indian art (including rugs and trinkets) and old maps." The Debtor valued these items at $11,000.00.
- "wearing apparel" valued at $1,100.00. At the October 13, 2011 hearing Elbee's attorney waived any claim to wearing apparel.
- "jewelry (including a wedding band and a watch)" valued at $2,500.
- "two firearms (Winchester 12 GA. Shotgun and 32 Cal. Sig Sauer pistol)" valued at $400.00.
- "3 Cannon cameras and related equipment" valued at $1,750.00.

The Debtor's claim of exemption to all of the foregoing personal property (excluding the wearing apparel) is denied as to any personal property purchased with funds wrongfully obtained from Elbee.

By separate order, this court has abstained from hearing the matters which were in litigation in the probate court in Bexar County, Texas at the time of the filing of the Debtor's bankruptcy case. Consequently, the matter of determining which items of personal property were purchased with funds wrongfully obtained from Elbee will be determined by that court and the turnover of those items of personal property to Elbee will be enforced by that court.

The court will separately issue an appropriate order.

6

#######

11-51797-cag Doc#96 Filed 10/20/11 Entered 10/20/11 07:53:18 Main Document Pg 6 of 6